285 F.2d 869
 AMERICAN BRAKE SHOE COMPANY, WINCHESTER, VIRGINIA, PLANT OF
AMERICAN BRAKEBLOK DIVISION, WINCHESTER, VIRGINIA, Appellant,
v.
LOCAL NO. 149 INTERNATIONAL UNION, UNITED AUTOMOBILE,
AIRCRAFT, AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA (UAW-AFL-CIO), Winchester,
Virginia, Appellee.
 No. 8085.
 United States Court of Appeals Fourth Circuit.
 Argued June 6, 1960.
Decided Jan. 6, 1961.
 
 Flournoy L. Largent, Jr., Winchester, Va. (Largent, Anderson & Larrick, Winchester, Va., on brief), for appellant.
 Lowell Goerlich, Washington, D.C. (J. Lynn Lucas, luray, Va., and Harold A. Cranefield, Detroit, Mich., on brief), for appellee.
 Before HAYNSWORTH and BOREMAN, Circuit Judges, and CHARLES F. PAUL, District Judge.
 CHARLES F. PAUL, District Judge.
 Appellant, Employer, appeals from an order of the District Court requiring specific enforcement of the award of an arbitrator, whose appointment grows out of a labor dispute, in this suit brought by the Appellee, Union, for the purpose of securing such order of enforcement, by virtue of 301(a) of the Labor Management Relations Act (U.S.C.A., Title 29, 185(a).
 Employer contends that the arbitrator's award exceeds his authority under the contract and the submission and that, insofar as the award requires payment of back wages to four individual employees, the District Court was without jurisdiction, at the suit of the Union, to order enforcement since the claims involved are uniquely personal to the four employees individually.
 The dispute arises under an Agreement between the parties, effective for the period February 27, 1956, to March 1, 1958. The Agreement contains the usual provisions that the management of the business, the direction of the working force, and the right to hire, promote, demote and transfer employees, shall rest with Employer. The appropriate clause contains a proviso that these rights 'will not be used for purposes of discrimination against any employee.'
 The wage provisions of the Agreement refer to 'Exhibit A' attached to the Agreement. Exhibit A lists, by title, some forty different job classifications, with the hourly rates applicable to each. Six of these job classifications are subdivided into classifications denominated A, B and C. These are referred to by the parties as 'multiple job classifications'. The two with which this dispute is concerned are 'Machine Repairman A, B and C', and 'Maintenance Man A, B and C'. Except for the job titles, neither the Agreement nor Exhibit A contains any written description of the job content of, or the skills requisite for, any classification or subdivision thereof.
 Article V of the Agreement, entitled 'Grievance Procedure', sets forth a four-step procedure for settling disputes between the parties. Paragraph Fifth of this article provides for compulsory arbitration and is quoted in the margin.[1]
 Disputes having arisen between the parties, on August 31, 1956, the Union filed with the Employer a written Statement of Grievance, the material portions of which are copied in the margin.[2] The grievances were not satisfactorily settled between the parties, and the Union served upon the Employer a written 'Demand for Arbitration', dated October 12, 1956. Under the heading, 'Claim or Relief Sought', this notice stated the matters with which we are concerned in the language quoted in the margin.[3] On October 18, 1956, the parties executed a stipulation agreeing to submit the matters for abitration to an arbitrator to be selected and to act under the 'Voluntary Labor Arbitration Rules of the American Arbitration Association.'
 Mr. G. Allen Dash, Jr. was chosen from a penel of the American Arbitration Association, and he held hearings on January 16 and 17, 1957, at which, among other matters, the Union introduced evidence that ten of the employees had been given work assignments, the job content of which were 'basically the same in every significant particular' as the jobs of other employees having higher job classifications and about whose job classifications there is no controversy. Employer took the position that the matter of up-grading an employee's job classification was none of the arbitrator's business, and offered no evidence and refused to participate in this phase of the arbitration proceedings.
 At this point it might be well to point out two other provisions of the basic labor Agreement. The Agreement contains provisions against strikes and lockouts during its effective period. In Article II, Section 2, the Agreement provides that 'shall any difference arise between the Company and the Union * * * as to the meaning or application of the provisions of this Agreement, the Company and the Bargaining Committee shall make an earnest effort to settle such differences in the manner provided in Article V of this Agreement.'
 The arbitrator disposed of 'Grievance No. 2' in the 'Demand for Arbitration' by finding for Employer on that issue. The effect is to limit this case to the dispositions made of the matters arising on 'Grievance No. 4'. In connection with his disposition of these issues, the arbitrator handed down a carefully considered and excellently prepared Opinion, which occupies some twenty-two pages of the printed record.
 In the Opinion, and in his award based thereon, the arbitrator disposed of the issues regarding the violation of seniority provisions by ruling thereon in favor of Employer. He denied the Union's demand that Employer be required to set up definite written criteria for the various job classifications and their subdivisions on the ground that to do so would require him to add to or subtract from or modify the terms of the Agreement, a function prohibited by the provisions of the Agreement relating to arbitration.
 The arbitrator did find that there is implicit in the Agreement, in the light of the construction placed upon it by the parties in settling prior disputes with respect thereto, a measuring rod sufficiently definite to afford workable principles in order practicably to settle disputes over job classifications. The method is to examine the work content of a job classification as established by the work assignments of employees over whose job classification there is no controversy, and to compare that with the work assignments of the employee seeking a higher rating. If the jobs are the same 'in every significant particular', then the complaining employee is entitled to the higher classification.
 Lest we do less than justice to the arbitrator's carefully worded statement of the principle enunciated, and the limitations thereof, in trying thus to paraphrase and epitomize his findings, two paragraphs from the arbitrator's Opinion with respect thereto are quoted in the margin.[4]
 With respect to six of the ten specific cases presented in evidence at the hearing, the arbitrator, with a nice appreciation of the limits of his function, found that they had not been sufficiently developed in the grievance procedures precedent to the aritration. He pointed out that the whole scheme of the grievance procedures contemplated the exhaustion of pre-arbitration efforts at voluntary settlement between the parties, and he referred these six cases back to the parties for that purpose. He directed that they be processed in consonance with the Opinion.
 With respect to the other four individual employees, the arbitrator found that their cases had been processed sufficiently in the pre-arbitration grievance procedures, found that they were entitled to the requested reclassifications, and ordered that they be made effective retroactively to August 31, 1956.
 Employer's first attack upon the award is based on its contention that, in reclassifying the four employees referred to in his award, the arbitrator necessarily added to the terms of the Agreement by establishing criteria for job classifications dehors the four corners of the instrument, and that he should have referred the 'cases back to the parties without decision.'
 With respect to this contention, the District Court said: 'If, as provided by Article II, Sect. 2, the 'meaning or application' of any provision of the Agreement is to be settled under Article V it would seem that the meaning or application of the provisions of Article V itself are included in those subject to arbitration.' With this disposition of the Employer's contention, we heartily agree. Even if we disagreed with the arbitrator's finding that he was discovering the 'meaning or application' of the Agreement (which we do not), we could not, under principles which are now familiar, review and disturb the arbitrator's finding. To substitute court ruling for the contracted-for finality of an arbitrator's findings would seriously impair, if not effectively emasculate, the provisions for arbitration and the submission thereto as instruments for industrial peace. The function of arbitration is to serve as a substitute for, not a prelude to, litigation.
 Employer's contention seems to be that, under the Agreement, it has the right to make work assignments and unilaterally to determine the job classification within which the work falls. If, as the arbitrator found was done here, it assigns two men, on different shifts, to the same job, and assigns one of them to a job classification carrying a higher hourly rate than the other, Employer is forced to take the position that no arbitrable issue has been raised. On the contrary, it would seem that Employer has used its asserted rights for the purposes of discrimination against one employee in direct contravention of the proviso in the section of the Agreement entitled 'Management'.
 Employer cites three cases as authority for its position.[5] All three of these cases involve suits brought to compel arbitration. They are to be distinguished from this case where arbitration was agreed to and completed. Here we have no preliminary question of arbitrability. The parties have settled that by their voluntary agreement. Our only problem is to decide whether the arbitrator ruled on a question of contract interpretation.
 In the General Electric Company case the court was faced with the question of the arbitrability of disputes involving the company's action in assigning employees to various 'grades' (not job classifications). It had to deal with a contract which contained the following provisions: 'The arbitrator shall have no authority to add to, detract from, or in any way alter the provisions of this Agreement. In addition, it is specifically agreed that no arbitrator shall have the authority to establish a wage rate or job classification, * * *.' The court reluctantly agreed that it could not order arbitration of the gradation issues in the face of this provision. In discussing various law review articles urging that the question of arbitrability should, itself, be submitted to the arbitrator's decision, the court said (250 F.2d at page 927), 'While not ignoring the force of these considerations, it seems to us that they would be persuasive not so much in a case like the present, but rather in inducing the parties to make a voluntary submission to arbitration, * * *.'
 In the Continental Oil case, the court affirmed the Order of the District Court directing arbitration of issues of the proper classification of various jobs. It eliminated from arbitration the Union's contention that a penalty be imposed for improper work assignment. In discussing the job classification issues, the court said (268 F.2d at page 458), 'The refinery cannot cease operating while the parties decide what employee should do a particular job. Instead, the company representative assigns the work according to his best judgment and if the assignment is incorrect, as the Union might see it, the question may be settled by the grievance procedure and arbitration. The settlement of a job classification is sufficient justification in itself for resort to arbitration.'
 In the Sunnyvale Westinghouse case, the District Court was faced with a contract which provided that the arbitrator should have no authority to process a request for arbitration if either party contended that the grievance did not raise an arbitrable issue. It provided that all issues of arbitrability should first be submitted for a court decision.
 In support of our ruling that the issues submitted to the arbitrator were clearly within his jurisdiction, and that his award was well within the bounds of his authority, we need only to refer to the exposition of the peculiar nature of labor-management contracts and of the office which arbitration fills with respect to making them workable, set forth in the most recent pronouncements of the United States Supreme Court.[6]
 The remaining issue in the case may be disposed of without extended discussion. The contention is that, inasmuch as the arbitrator's award adjudicates the right of the four individual employees to be paid additional wages because of their misclassification, the court lacks jurisdiction to entertain this action for enforcement at the suit of the Union, and should relegate the employees to their appropriate actions, in individual suits, under State law.
 Employer would have us abandon our holdings in Textile Workers Union of America v. Cone Mills Corporation, 4 Cir., 1959, 268 F.2d 920, and Enterprise Wheel & Car Corp. v. United Steelworkers of America, 4 Cir., 1959, 269 F.2d 327, and apply to the facts in this case the holding of the Supreme Court in Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510.
 Even since Textile Workers Union, etc. v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, there seems to have been a lingering doubt that the Westinghouse decision should be limited to its peculiar factual situation. This lingering doubt led the Court of Appeals for the Fifth Circuit, in Mississippi Valley Electric Company v. Local 130 of International Brotherhood of Electrical Workers, 1960, 278 F.2d 764, to hold that Section 301 of the Labor Management Relations Act did not confer upon the Federal Courts jurisdiction to enforce an arbitration award in a labor dispute where the award ordered back pay. The doubt has been removed by the holding of the Supreme Court in United Steelworkers of America v. Enterprise Wheel & Car Corp., supra.
 The judgment of the District Court should be modified to make it clear that the court retains jurisdiction to order the parties to take appropriate steps, by renewed or newly initiated arbitration if necessary, to determine the amount of the monetary award and to resolve all remaining disputes in accordance with the arbitrator's award. As so modified, the judgment of the District Court should be affirmed.
 Judgment modified and case remanded for further proceedings.
 Modified and remanded.
 
 
 
 [1]
 'When a grievance cannot be settled satisfactorily by the foregoing steps, either party may refer the matter to an arbitrator provided they do so within five (5) days of the meeting provided in Step Four
 'When one of the parties notifies the other that arbitration is desired, the two parties shall meet and if possible select a neutral arbitrator. If the two parties cannot agree within five (5) days an arbitrator shall be chosen by procedures and from panels of the American Arbitration Association.
 'This arbitrator shall have no power to add to or subtract from or modify any of the terms of this Agreement, any agreements made supplementary hereto, nor to establish or change any job rate, nor to rule on any dispute relating to production standards, but shall refer such cases back to the parties without decision.
 'The arbitrator shall investigate the matter, hear evidence or testimony and promptly render a decision on the question stated in the stipulation. A decision of the arbitrator shall be final, conclusive and binding on both parties.
 'The parties shall equally share the expense of the arbitrator.'
 
 
 [2]
 'The Union charges the Company with violation of the Classification and Wage Rates-- (Exhibit A)-- by their refusal to move employees from one classification to another while all the employees in the A, B and C multiple job classifications are doing identical work while receiving different rates of pay. Any multiple job classification requires some division of work assignment. This the Company is not doing
 'In view of the above points of protests, the Union requests that:
 '1-- The Company live up to the seniority provision of the contract in moving employees in and out of departments throughout the plant.
 '2-- The Company establish some criteria for movement in multiple classifications.
 '3-- In the case of seniority violation, the improper moves be corrected and the employees who have been improperly denied up-grading and down-grading be placed on said jobs and be paid thirty (30) days retroactively from the date of this written grievance.
 '4-- The proper motions be made-- especially in the Maintenance Department-- from one part of a multiple classification to another, namely: from C to B to A; and that all employees affected be paid the higher rate of the classification to which they are up-graded, on a retroactive basis of thirty (30) days prior to this written grievance.
 'Inasmuch as this is a Policy Grievance, the Union is submitting it to Management and requests an early meeting to discuss the matters.'
 
 
 [3]
 'Grievance No. 4 concerns improper classification of employees in Maintenance Department and A-B-K Finishing Department where employees are classified in multiple classifications receiving different rates of pay but doing identical work. This is a policy grievance, so written to cover the whole plant in our attempts to seek relief from this improper method of classifying employees. This policy grievance also involves the question of seniority. The Union demands that employees be properly classified and properly paid and that the seniority provision be adhered to.'
 
 
 [4]
 'Possibly the most basic criteria that can be used in determining the proper classification of a particular employee about whom some question has been raised is to contrast his job assignments with those of employees whose job classifications are not at issue. If the job assignments of a certain employee or employees over whose job classification there is no controversy are reviewed to determine their content, and if it is found that the job assignments of another lower rated employee whose job classification is at issue are basically the same in every significant particular, it is appropriate to conclude that the job classification of the latter employee should be raised to conform with that of the higher rated employee or employees
 'The above conclusion does not mean that a protesting employee can expect to secure an increase in his job classification merely because he occasionally receives the same kind of job assignment as the higher rated employee. It is to be expected in a Maintenance Department of the size involved in this plant that the higher rated employees will perform widely divergent types of work, only some of which will require the assertion of their highest degree of skill. If a lower rated employee is given these assignments calling for application of the lesser degrees of skill, there is certainly no reason to find that such an employee is entitled to be covered by the higher rated classification. Additionally, it is to be expected that, for purposes of securing experience, the lower rated employee will occasionally be given an assignment calling for the application of the highest degree of skill in his classification. But this occasional assignment for purposes of training and experience does not warrant the raising of this lower rated employee to the classification to which such an assignment would be given as a regular and ordinary part of the job.'
 
 
 [5]
 Local No. 149, etc. v. General Electric Company, 1 Cir., 1957, 250 F.2d 922, 925; Refinery Employees Union of Lake Charles Area v. Continental Oil Co., 5 Cir., 1959, 268 F.2d 447; Sunnyvale Westinghouse Salaried Emp. Ass'n v. Westinghouse Electric Corporation, D.C.W.D.Pa.1959, 175 F.Supp. 685
 
 
 [6]
 United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (decided June 20, 1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (decided June 20, 1960)