AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, LOCAL 195, AFL–CIO

v.

M. FEDER & CO.

Civ. A. No. 33788.

United States District Court
E. D. Pennsylvania.
Sept. 28, 1964.

Edward Davis, Philadelphia, Pa., for plaintiff.

Herbert Toff, Easton, Pa., for defendant.

FREEDMAN, Circuit Judge (acting by designation).

Plaintiff union has brought this action under § 301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a), against the defendant employer to enforce a settlement agreement. The agreement, which involves one employee, was arrived at during arbitration proceedings invoked by the union pursuant to a collective bargaining agreement, but it was not formally embodied in an arbitrator's award.

Defendant had attacked the jurisdictional claim under § 301(a) by an earlier motion to dismiss, which was denied by Judge Van Dusen. Amalgamated Meat Cutters & Butcher Workmen of North America, Local 195, AFL–CIO v. M. Feder & Co., 224 F.Supp. 739 (E.D.Pa.1963). An appeal was dismissed because the order lacked finality. Thereafter the pleadings were completed and each party has now moved for summary judgment in its favor.

The pleadings and affidavits make it clear that during the existence of a collective bargaining agreement between the parties a grievance arose based upon the discharge of one Edwin Althouse, an employee and union member. The grievance machinery provided for in the collective bargaining agreement was invoked and, pursuant to the procedures of the American Arbitration Association, G. Allan Dash, Jr. was designated as arbitrator. The parties appeared with their counsel at a hearing before the arbitrator on March 18, 1963. Before any witnesses were heard and after some discussion with the arbitrator the parties amicably settled their dispute. They agreed that the defendant would pay Althouse $275 and Althouse would resign from the defendant's employ. The settlement agreement was not formalized in any way by the arbitrator.

The case has been cleared of factual differences [1] and there is left for determination the question whether this court has jurisdiction under § 301(a) to enforce the agreement.

[1]. Defendant's answer and affidavits did not deny the terms of the settlement, but were not clear as to whether defendant claimed that the dispute was not actually settled by the parties or that there was an understanding that the settlement was not to be final until a formal award was made by the arbitrator. Accordingly, on August 12, 1964, I entered a Memorandum Order directing the defendant to clarify its position on these factual issues by deposition or affidavit, and gave

Section 301(a) of the Labor-Management Relations Act provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * *, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

1. Defendant's principal contention is that the present claim is not within § 301(a) because it is "uniquely personal" to the employee Althouse and is related only incidentally if at all, to the collective bargaining agreement. The Westinghouse case (Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955)), on which defendant relies, "is no longer authoritative as a precedent." Smith v. Evening News Association, 371 U.S. 195, 199, 83 S.Ct. 267, 9 L.Ed.2d 246, 269 (1962). The Smith case refutes the view that claims of a "uniquely personal right" are out-side § 301(a). The Court there said: "The rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts. Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law." (p. 200, 83 S. Ct. p. 270) [2]

The jurisdiction of the federal courts under § 301(a) is intended to make it possible for them "to fashion a body of federal law for the enforcement of * * * collective bargaining agreements * * *." Textile Workers Union of America v. Lincoln Mills, 353,

leave to plaintiff to respond to any factual averments by counter-deposition or counter-affidavit.

Pursuant to that Memorandum Order an affidavit has now been filed by Martin Feder which specifies "that an amicable settlement was, in fact, arrived at between the parties and that the parties did not expressly or in any other manner arrange or understand that such settlement was not to be final until a final award was made by the Arbitrator." It is also averred that defendant, by letter to the American Arbitration Association, confirmed the agreement between the parties. Thus the averment in the affidavit of Rocco Rossano that the settlement agreement was understood to be final and binding is now confirmed.

2. Although the opinion of Mr. Justice Frankfurter on the point of decision in the Westinghouse case no longer prevails, it nevertheless acknowledges some of the practical considerations which are now particularly significant: "As a practical matter, the employees expect their union not just to secure a collective agreement but more particularly to procure for the individual employees the benefits promised. If the union can secure only the promise and is impotent to procure for the individual employees the promised benefits, then it is bound to lose their support. And if the union cannot ultimately resort to suit, it is encouraged to resort to strike action. * * * It is a matter of industrial history that stoppages of work because of disciplinary penalties against individuals, or because of failure to pay the rates claimed, or because of the promotion or layoff of one employee rather than another, or for similar reasons, have been frequent occurrences." (348 U.S. p. 457, 75 S.Ct. p. 499).

Mr. Justice Douglas, with whom Mr. Justice Black joined in dissent, said: "It is plain, I think, that the grievance procedure is a part of the collective bargaining process. And a lawsuit is one of the ultimates of a grievance. A lawsuit, like negotiation or arbitration, resolves the dispute and settles it. * * * What the union obtains in the collective agreement it should be entitled to enforce or defend in the forums which have been provided. When we disallow it that standing, we fail to keep the law abreast of the industrial developments of this age." (p. 467, 75 S.Ct. p. 504)

U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed. 2d 972 (1957). They have power to require the specific performance of a provision for arbitration contained in a collective bargaining agreement,[3] and to enforce an award made by the arbitrator.[4] Such jurisdiction is not defeated because the ultimate beneficiaries of the arbitration process in a particular dispute are a few employees,[5] or even if the ultimate beneficiary is a single employee. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960). The union here made the agreement with the employer, and the union may enforce it in the federal courts.

2. Defendant contends that jurisdiction is lacking because there was no formal award by the arbitrator.

■ Most of the cases have dealt with the problem of how far § 301(a) is to be construed beyond its literal language. The present case, however, falls within the express language of § 301(a), which establishes federal jurisdiction in "[s]uits for violation of contracts between an employer and a labor organization." The settlement by the union and employer was a contract between them and in entering into it the union acted as the collective bargaining agent of the employees. Such a settlement, moreover, is included in the policy which underlies the Labor-Management Relations Act. Section 173(d) (29 U.S.C. § 173

(d)) provides: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising under the application or interpretation of an existing collective-bargaining agreement." "That policy", the Supreme Court said in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1346 (1960), "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play."[6]

Here the grievance machinery had been set in motion under the collective bargaining agreement and a hearing had begun when, at the suggestion of the arbitrator, settlement discussion was begun and successfully concluded. The important policy considerations which favor the early settlement of labor disputes without outside interference would be frustrated if settlement agreements reached in the grievance process were refused enforcement unless incorporated in a formal arbitrator's award. For if a final and binding settlement such as the one the union achieved here with the employer were not enforceable in the federal courts the incentive would be gone for early settlement after the grievance procedure had been set in motion. The union would be required to carry its controversy to the ultimate end of the grievance process or lose the right to enforcement in the federal courts.

3. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912 (1957); General Electric Co. v. Local 205, United Electrical, Radio & Machine Workers of America, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957); Goodall-Sanford, Inc. v. United Textile Workers of America, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

4. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424

(1960); Textile Workers Union of America v. Cone Mills Corp., 268 F.2d 920 (4th Cir. 1959); American Brake Shoe Co., etc. v. Local No. 149, etc. UAW, 285 F.2d 869 (4th Cir. 1961). See also General Drivers, Warehousemen, and Helpers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed. 2d 918 (1963).

5. Textile Workers Union of America v. Cone Mills Corp., 268 F.2d 920 (4th Cir. 1959); American Brake Shoe Co., etc. v. Local No. 149, etc. UAW, 285 F.2d 869 (4th Cir. 1961).

6. See also General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 519, 83 S.Ct. 789 (1963).

I conclude, therefore, that the final and binding settlement agreement reached by the parties at the opening of the arbitration hearing has the same standing under § 301(a) as an award by an arbitrator. Settling as it does a grievance invoked by the collective bargaining agent on behalf of the employee against the employer, it is not a simple claim on an oral promise by an employee against an employer.

■ 3. Defendant urges that the union had no standing to represent Althouse when the complaint was filed, because the collective bargaining agreement had expired, the plaintiff had ceased to be the exclusive bargaining representative for the employees, and Althouse was no longer a member of the union.

This contention is without merit. When the settlement was made the collective bargaining agreement between the parties was in force and Althouse was a member of the union. In United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358 (1960), the Court reversed a ruling that rights created and arising under collective bargaining agreements remain in force only for the life of the contract and held that an arbitrator's order reinstating workers and awarding back pay was enforceable even though the award was made after the expiration of the contract. Similarly in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912 (1957), the Court enforced a contractual obligation to arbitrate past grievances even though there was no longer any real collective bargaining relationship between the union and the employer.[7]

In this case the grievance and the settlement agreement which fixed the obligations of the parties occurred while the collective bargaining agreement was in force. It is, therefore, a clearer case of federal jurisdiction than Enterprise Wheel or Lincoln Mills. A contrary rule would encourage an employer who had made a settlement agreement with a union or suffered an adverse arbitrator's award to withhold performance in the hope that a forthcoming election might result in the decertification of the union. Obviously, such a result would frustrate the federal labor policy favoring prompt settlement by the parties of their disputes, would substantially reduce the desirability of arbitration provisions, and would fly in the face of the congressional policy behind § 301.

### ORDER

And now, September 28, 1964, defendant's motion for summary judgment is denied, and plaintiff's motion for summary judgment is granted.

7. See also Zdanok v. Glidden Company, 288 F.2d 99, 90 A.L.R.2d 965 (2 Cir. 1951); United Furniture Workers of America v. McCoy Couch Furniture Mfg. Co., 223 F.Supp. 880 (D.C.1963); but see Taft, Ingalls & Co. v. Truck Drivers, etc. Union, 202 F.Supp. 317 (D.C.1962).