**UNITED MINE WORKERS OF AMER-
ICA and Local No. 1486, United Mine
Workers of America, Plaintiffs,**

v.

**PEGGS RUN COAL COMPANY, Inc.,
Defendant.**

Civ. A. No. 71–1176.

United States District Court,
W. D. Pennsylvania.

March 31, 1972.

Melvin P. Stein, Kuhn, Engle & Blair,
Pittsburgh, Pa., for plaintiffs.

Harvey W. Daniels, Conte, Courtney,
Tarasi & Price, Pittsburgh, Pa., for de-
fendant.

OPINION

TEITELBAUM, District Judge.

This is an action under § 301 of the
Labor-Management Relations Act (29
U.S.C. § 185) in which the plaintiffs,
United Mine Workers of America and
Local 1486, United Mine Workers of
America seek to compel the defendant,
Peggs Run Coal Company, Inc., to honor
an agreement allegedly reached during
the arbitration of grievances of four of
the plaintiffs' members, Earl Price,
James Barkley, Gary Gillespie and Larry
Campbell. The action was filed on De-
cember 16, 1971. Subsequently, on Feb-
ruary 14, 1972, the plaintiffs filed, sup-
plementally, an application for a prelimi-
nary injunction. The subsequent appli-
cation was occasioned, allegedly, by the
developing destitution of James Barkley.
At the hearing on the application, the
trial of the *original* aspect of the action,
i. e., for a permanent injunction to com-
pel the defendant to honor the agree-
ment, was, with the consent of the par-
ties, advanced and consolidated with the
hearing on the application for the pre-
liminary injunction. Accordingly, all of
the evidence respecting the original as
well as the supplemental request for re-
lief has been introduced and this action
is therefore ripe for total and final dis-
position.

The grievances of Price and Barkley
involved their claims for back pay and
reinstatement; the grievances of Gilles-
pie and Campbell involved their claims
for only back pay. They were all proc-
essed, under the "Settlement of Local
and District Disputes" section of the
National Bituminous Coal Wage Agree-
ment of 1968, through the first four
steps of the arbitration machinery. The
fourth step, which consists of the empan-
elling of a board of four members—two
members to be designated each by labor

and management—to resolve the grievances, was invoked when the grievances went unresolved through the first three steps. The fourth step board was composed of Roland Nuccetelli and Robert Abbadini, labor representatives, and James E. Elkin and Joseph Kristoff, Jr., management representatives.

The critical issue in this action is whether or not an agreement was reached by the fourth step board. The parties have stipulated that if an agreement was reached, Price and Barkley should have been reinstated effective September 28, 1971. Nor is it contested that if an agreement was reached, Campbell's grievance should be denied and Gillespie's compromised.

The board, whose decisions are undeniably final and binding, held its first meeting on September 9, 1971. A hearing was conducted on that date at which testimony was taken, but at which no decision was made. A second meeting was held on September 13, 1971, but again no decision was made. Indeed, none of the parties dispute the fact that no agreement was reached at either of the September 9 or September 13 meetings. However, a third meeting was held on September 27, 1971, and as to whether or not an agreement was reached at that meeting there is substantial dispute. There is also a dispute as to whether or not the president of the defendant, Jack Courtney, had a right to veto or disapprove of the agreement. The first dispute is factual; the second, legal.

Elkin, the chairman of the board, testified that there was no final agreement, and that any agreement that may have been reached was tentative, dependent on approval by Courtney. He testified that any agreement was actually outside the arbitration proceedings, and that that is the reason none was reduced to writing. In further support of its contention that no agreement was reached, the defendant has offered the official "DECISION" of the fourth step board, dated September 29, 1971, and duly signed by all of the board's members, which recites as follows:

"The Board is unable to reach an agreement and hereby recommends that the matter be referred to an umpire to be mutually agreed upon by the Operator and the duly designated representatives of the United Mine Workers of America."

Nuccetelli and Abbadini testified that they came away from the September 27 meeting thinking that an agreement had been reached. They testified that the agreement was not then reduced to writing only because it was late in the day and no one was available to type it. They further testified that Elkin suggested that he would take the agreement to Courtney for approval, and that only when Courtney disapproved of the agreement did they despairingly execute the "DECISION".

The defendant additionally, incidentally, contends that even if an agreement was reached, the grievances which it resolved expired with the National Bituminous Coal Wage Agreement of 1968 on October 1, 1971, and that therefore the agreement was void. In any event, Courtney disapproved of the agreement and consequently it was not honored by the defendant.

■ This court has jurisdiction under § 301. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). This court has the power to specifically enforce both collective bargaining agreements and awards made through arbitration proceedings conducted pursuant to collective bargaining agreements. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); see Retail Clerks International Association v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962) and Amalgamated Meat Cutters and Butcher Workmen of North America v. M. Feder & Co., 234 F.Supp. 564 (D.C.E.D.Pa.1964). Further, the president of the defendant,

Courtney, had no right to veto or disapprove of an oral agreement reached by the fourth step board, if, in fact, one was reached. To hold to the contrary would be to emasculate the express provision of the collective bargaining agreement that,

> "[A] decision reached at any stage of the [arbitration] proceedings . . . shall be binding on both parties . . . ."

 I conclude that Courtney's approval was more in the nature of a condition subsequent than a condition precedent, and therefore that, in fact, an agreement, albeit oral, was reached among the members of the board at the meeting of September 27, 1971. (And, as indicated, as a condition subsequent Courtney's approval or disapproval was of no effect.) Further, I find that, notwithstanding the defendant's imaginative but fanciful contention that the grievances expired with the 1968 collective bargaining agreement on October 1, 1971, the agreement is still fully enforceable. A compromise, the agreement provided that Campbell's grievance was to be denied, that Gillespie was to be awarded eight hours back pay, and that Price and Barkley were to be reinstated, but without back pay.

In compelling the defendant to honor the agreement, its terms must be faithfully enforced. See United Steelworkers of America v. Enterprise Wheel & Car Corp., *supra*; United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960); and United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Therefore, Campbell's grievance will be denied, Gillespie will be awarded eight hours back pay, or $34.44, Price will be awarded back pay of $726.04 less earnings of $90.00, or $636.04, and Barkley will be (1) reinstated effective September 28, 1971, and (2) awarded back pay of $3,541.03 less earnings of $475.00, or $3,066.03.

An appropriate Order will be entered.