David A. DAVIS, Appellant,

v.

**OHIO BARGE LINE, INC., a corporation, and National Maritime Union of America, AFL–CIO, Port of Pittsburgh.**

No. 82–5295.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1982.

Decided Jan. 10, 1983.

---

Anthony J. Polito (argued), Corcoran, Hardesty, Ewart, Whyte & Polito, P.C., Pittsburgh, Pa., for Ohio Barge Line, Inc.

Ronald L. Gilardi (argued), Gilardi & Cooper, P.A., Pittsburgh, Pa., for Nat. Maritime Union of America, AFL–CIO, Port of Pittsburgh; George J. Cappiello, Jr., Phillips & Cappiello, New York City, of counsel.

Peter W. Sumak (argued), Washington, Pa., for appellant.

Before ALDISERT, SLOVITER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is an appeal from the dismissal of Davis' complaint against his former employer Ohio Barge Line, Inc. [OBL] and the National Maritime Union of America, AFL–CIO, Port of Pittsburgh [Union]. The central issue on appeal is whether the district court erred in dismissing two counts of his complaint for want of subject matter jurisdiction under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. We will vacate the dismissal and remand to the district court.

### I.

When a case comes to us from a jurisdictional dismissal granted on defendants' motion pursuant to Fed.R.Civ.P. 12(b)(1), the factual allegations of the complaint must be taken as true for purposes of our review. *Garrett v. Bamford,* 538 F.2d 63, 65 (3d Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976). Appellee Ohio Barge Line, Inc. is a Pennsylvania corporation which engages in the interstate shipment of bulk freight products. OBL first hired Davis as a deckhand on October 16, 1978 but discharged him shortly thereafter on October 23, 1978, allegedly because he was handicapped. Plaintiff claims to be a controlled epileptic and a slow learner. Davis did not resort to the union grievance procedure under the applicable collective bargaining agreement for the discharge but did lodge a complaint with the Department of Labor alleging discrimination because of a handicap in violation of section 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 793. Additionally, he filed a civil suit in state court. OBL entered into a settlement agreement with Davis dated and signed December 22, 1980 but effective July 23, 1980, under which OBL agreed to reinstate Davis on July 23, 1980 and to calculate his seniority as if he had been employed as a deckhand by OBL throughout the period from October 16, 1978 to July 23, 1980. The settlement agreement specified that Davis' retroactive seniority rights were to include, but not be limited to, layoffs, promotions, rehiring, wage rates, bonus, and retirement, pension and other fringe benefits. Davis agreed to withdraw his complaints and surrender his backpay claims. The settlement agreement provided that Davis should have all of the rights and duties prescribed by the applicable collective bargaining agreement between OBL and the Union.

On January 2, 1981, OBL again discharged Davis. This time Davis protested to the Union, which processed a grievance pursuant to the collective bargaining agreement. That agreement stated that employees could be "laid off" during the first 90 days work, but has no such express provision in the section dealing with employee "discharge." For purposes of the arbitration hearing on Davis' grievance, counsel for OBL and the Union stipulated that deckhands with less than 90 days active service aboard a ship are considered probationary employees who can be discharged without cause. The parties further stipulated that the arbitrator should initially decide whether or not Davis, who at the time of discharge had 83 active onboard work days, was a probationary employee. The arbitrator analyzed both the collective bargaining agreement and the settlement agreement, concluded that Davis was a probationary employee who could be discharged without cause, and entered an award denying the grievance and sustaining the discharge.

Davis then filed this action against both OBL and the Union in the United States District Court for the Western District of Pennsylvania, seeking damages, costs, attorney's fees, reinstatement, injunctive relief and/or rehearing. His complaint contained three separate counts. Count One asserted a cause of action against OBL for wrongful discharge and a corresponding claim against the Union for breach of its duty of fair representation. Count Two sought to vacate or modify the arbitrator's award on the ground that the arbitrator exceeded his powers under the collective bargaining agreement, and failed to conform to its procedural requirements. Jurisdiction as to both counts was invoked pur-

suant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Finally, Count Three purported to state a claim under section 503 of the Rehabilitation Act of 1973, alleging handicap discrimination. Both OBL and the Union moved to dismiss all three counts for failure to state a claim and for lack of subject matter jurisdiction.

The district court granted the defendants' motions to dismiss Counts One and Two for lack of subject matter jurisdiction on the ground that they were based on alleged violations of the settlement agreement, which did not constitute a "contrac[t] between an employer and a labor organization" within the meaning of section 301. The court also dismissed Count Three on the basis that section 503 of the Rehabilitation Act did not confer a private right of action. *Davis v. Ohio Barge Line, Inc.*, 535 F.Supp. 1324 (W.D.Pa.1982).

## II.

### A.

#### Count One

As the Supreme Court has stated, it is well established that in passing on a motion to dismiss on the ground, *inter alia,* of lack of jurisdiction over the subject matter, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Indeed, pursuant to our obligation to read the complaint liberally in determining whether the facts set forth justify taking jurisdiction on any ground, we have in the past overlooked a complaint's reliance on jurisdictional statutes which are inapposite and instead independently ascertained whether there was any basis on which subject matter jurisdiction could be asserted. *See, e.g., Bachowski v. Brennan,* 502 F.2d 79, 82–83 & n.2 (3d Cir.1974), *rev'd on other grounds sub nom. Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Wymard v. McCloskey & Co.,* 342 F.2d 495, 497–98 (3d Cir.) (en banc), *cert. denied,* 382 U.S. 823, 86 S.Ct. 52, 15 L.Ed.2d 68 (1965); *Beeler v.*

*United States,* 338 F.2d 687, 689 (3d Cir. 1964); *see also Vukonich v. Civil Service Commission,* 589 F.2d 494, 496 n.1 (10th Cir.1978); *New York State Waterways Association, Inc. v. Diamond,* 469 F.2d 419, 421 (2d Cir.1972); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 551–52 (1969). Here plaintiff has alleged jurisdiction under the appropriate statute.

■ Section 301(a) of the Labor Management Relations Act provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). To fall within that section it is necessary only that the plaintiff be asserting a violation of a contract between an employer and a union.

In *Chasis v. Progress Manufacturing Co.,* 382 F.2d 773 (3d Cir.1967), this court was obliged to consider whether the allegations in the complaint were sufficient to establish jurisdiction in the district court under section 301(a). In holding that they were, notwithstanding considerably less specificity in that complaint than here, we stated:

Moreover, the basic purpose of the statute involved, viz., § 301(a), was not to limit, but to expand, the availability of forums for the enforcement of contracts made by labor organizations. *Dowd Box Co. v. Courtney,* 368 U.S. 502, 508, 82 S.Ct. 519 [523], 7 L.Ed.2d 483 (1962). The statute is not to be given a narrow reading as Congress intended to have the administration of collective bargaining contracts accomplished under a uniform body of substantive law. *Smith v. Evening News Ass'n,* 371 U.S. 195, 199, 83 S.Ct. 267 [269–270], 9 L.Ed.2d 246 (1962).

*Id.* at 777.

■ In this case the district court held that the "essence of plaintiff's allegations

in count 1 regarding his 1981 discharge is that he was discharged wrongfully in breach of the provisions of the *'Settlement Agreement'* ", 535 F.Supp. at 1326, rather than in breach of the collective bargaining agreement. We find this conclusion cannot withstand a liberal reading of the complaint. Fairly read, Count One of the complaint alleges that under the collective bargaining agreement "no employee covered by the agreement shall be discharged except for 'just cause' " (paragraph 8); that plaintiff was discharged by defendant on January 2, 1981, and that plaintiff denies "that there was 'proper cause' for his dismissal *as required by the agreement* " (emphasis added) (paragraph 9); that the Union, without any support in the language in the collective bargaining agreement or relevant past practices, stipulated for purposes of the arbitration that the proper cause provision was inapplicable to probationary employees such as plaintiff who had fewer than 90 active working days (paragraph 11 and Exhibit C); and that the settlement agreement gave plaintiff retroactive seniority protecting him from discharge without cause (paragraphs 4, 11 and Exhibit A).

The district court's conclusion that plaintiff claimed *only* under the settlement agreement is belied by the clear language of the complaint. The gravamen of plaintiff's action for wrongful discharge is the discharge in violation of the agreement precluding discharge except for proper cause. As the language of the complaint and the two agreements attached as exhibits make clear, only the collective bargaining agreement imposed a requirement of proper cause before discharge. Thus it is the collective bargaining agreement which is the source of the obligation sought to be enforced. *See Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre Local 120,* 647 F.2d 372, 380 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982).

▉ Davis contends that even if he were relying only on the settlement agreement, there would be section 301 jurisdiction in the district court. Assuming, as

alleged, that the Union approved the settlement agreement, including its retroactive seniority provisions, even though it failed to sign it, it does not follow that the agreement qualifies as a contract "between an employer and a labor organization representing employees" within section 301(a). A private agreement between an employer and employee independent of a collective bargaining agreement generally does not fall within section 301(a) even though the complaint alleges some nexus with the union. *Cf. Local No. 1 (ACA) v. International Brotherhood of Teamsters,* 614 F.2d 846, 849 n.3 (3d Cir.1980) (salary claim by union officer against his employer union did not fall within section 301). In *Adams v. Budd Co.,* 349 F.2d 368 (3d Cir.1965), we rejected the contention that section 301 jurisdiction would lie for a suit by individual employees alleging that a labor contract bargained away their rights under their original employment agreements. We distinguished between an action seeking redress for a violation *of* a collective bargaining agreement and one seeking redress for an alleged violation *by* a collective bargaining agreement. In contrast, in *Amalgamated Meat Cutters & Butcher Workmen Local 195 v. M. Feder & Co.,* 234 F.Supp. 564 (E.D.Pa. 1964), Circuit Judge Freedman, sitting by designation, held section 301 jurisdiction existed for an action against an employer to enforce a settlement agreement which had been entered into by the union on an employee's behalf at an arbitration hearing. Judge Freedman rejected the contention, made here as well, that a settlement agreement involving a single employee could not satisfy section 301 because it was "uniquely personal" to that employee and was "related only incidentally if at all, to the collective bargaining agreement." *Id.* at 566. However, in so ruling, the judge stressed the union's leading role in representing the employee and negotiating the settlement agreement at issue, which raised the suit to enforce that agreement above that of "a simple claim on an oral promise by an employee against an employer." *Id.* at 568. The union involvement in the agreement at issue in *Feder* was considerably greater

than that alleged here. Even giving section 301 a broad reading, as required by *Chasis,* we conclude that mere approval by the Union of the OBL-Davis settlement is not enough to warrant treating the settlement agreement as a section 301 contract.

Therefore, we must consider defendants' contention that the essence of Count One of the complaint is the alleged violation by the employer of the settlement agreement, rather than the collective bargaining agreement. As we concluded above, the complaint expressly alleges a violation of the collective bargaining agreement. Indeed, it appears that plaintiff's claim for unlawful discharge is based on alternate theories, one being a violation of the collective bargaining agreement, as to which there is federal jurisdiction, and the other being a violation of the settlement agreement, as to which there is no independent basis for jurisdiction. The inclusion of an alternate theory cannot deprive the federal court of its statutory jurisdiction to decide a claim properly brought, as long as that claim is not on its face incidental, insubstantial or frivolous.

OBL also argues that determination of the claim based on the collective bargaining agreement will require an interpretation of the effect of the retroactive seniority provision of the settlement agreement. If Davis prevails on his contention that the proper cause provision of the collective bargaining agreement applied to all employees, there would be no need to refer to the settlement agreement. Only if he is unsuccessful on that claim would the court have to consider his secondary position under the collective bargaining agreement, *i.e.,* that, in any event, the retroactive seniority awarded him under the settlement agreement raised him to the status of a non-probationary employee for purposes of the proper cause provision of the collective bargaining agreement. The mere fact that for that purpose reference to a document other than the collective bargaining agreement would be required does not dilute the essence of Davis' claim that he was discharged by OBL in violation of the proper cause provision of the collective bargaining contract. *Cf. Wilkes-Barre Publishing Co. v. Newspaper*

*Guild of Wilkes-Barre Local 120,* 647 F.2d at 380 ("The issue [for determining whether there is section 301 jurisdiction is] whether the remedy sought may require that the court ... interpret a collective bargaining agreement").

Since the district court has jurisdiction to consider plaintiff's claim that his discharge was in violation of the collective bargaining agreement, it follows that the court can consider plaintiff's alternate claim that the discharge was also in breach of the settlement agreement. The relationship between the agreements presents an archetypical situation for finding pendent jurisdiction under the test enunciated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The interrelationship, while supporting consideration of the alternate theory, can hardly justify divesting the federal court of jurisdiction over the claim properly before it.

Given our conclusion that the complaint alleged a breach of the collective bargaining contract under section 301, it follows that plaintiff's claim against the Union for breach of its duty of fair representation in the handling of Davis' grievance was also within the jurisdiction of the district court. *See Vaca v. Sipes,* 386 U.S. 171, 183–88, 87 S.Ct. 903, 913–915, 17 L.Ed.2d 842 (1967). The complaint alleges that the Union and its representatives, agents and employees acted in an arbitrary, discriminatory fashion and processed the plaintiff's complaint in a perfunctory manner. The same paragraph details the specific manner in which the Union allegedly violated its duty of fair representation.

Whether the contract will support plaintiff's interpretation of its terms and whether the evidence will support plaintiff's contentions as to the Union's actions is not presently before us. The district court dismissed the action for lack of subject matter jurisdiction under Rule 12(b)(1), not for failure to state a claim under Rule 12(b)(6). The issue of subject matter jurisdiction must be considered as separate from an evaluation of the merits as long as the

federal claim does not appear clearly "immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *see also Hagans v. Lavine,* 415 U.S. 528, 536–38, 542–43, 94 S.Ct. 1372, 1381–1382, 39 L.Ed.2d 577 (1974); *Baker v. Carr,* 369 U.S. 186, 199, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). We will, therefore, vacate the district court's judgment dismissing Count I of the complaint and remand for further proceedings.[1]

### B.

#### Count Two

The district court dismissed Count Two of the complaint for the same reason given in dismissing Count One, *i.e.,* that plaintiff's claims are anchored upon the settlement agreement rather than the collective bargaining agreement. The court construed Count Two as attacking the arbitrator's decision "on the basis that the arbitrator either ignored or improperly construed provisions of the '*Settlement Agreement.*'" 535 F.Supp. at 1326. In reading Count Two, we are guided by the same liberal construction previously used in consideration of Count One.

Count Two of the complaint was brought to vacate or modify the arbitrator's award, and specifies that jurisdiction arises under section 301. The collective bargaining agreement provided for a grievance procedure culminating in binding arbitration, as set forth in paragraph 8 of the complaint. In paragraph 16, the complaint alleges that the collective bargaining agreement provides that the arbitrator is precluded from adding to, subtracting from, or modifying the terms of this agreement. Paragraph 17 alleges that the arbitrator held that plaintiff was a probationary employee with less than 90 days experience despite the express language of the plaintiff's settlement agreement. Paragraph 18 then alleges that the award "is wholly void in that the arbitrator exceeded his powers in adding to or

modifying the express language of the agreement and further failed to conform to the procedural requirements of the agreement regarding the time of the award." Paragraph 19 alleges that "the arbitrator's award fails to draw its essence from the *agreements*" (emphasis added). It alleges that the arbitrator ignored the express language of the settlement agreement with regard to retroactive seniority and that "there exists no express provision providing for discharge without cause."

■ Defendants apparently concede that a suit to set aside an arbitration award entered pursuant to a collective bargaining agreement falls within federal jurisdiction under section 301 if it alleges that the award failed to draw its essence from the collective bargaining agreement or that the arbitrator exceeded his powers thereunder. *See, e.g., Kane Gas Light & Heating Co. v. International Brotherhood of Firemen & Oilers Local 112,* 687 F.2d 673, 677 n.6 (3d Cir.1982); *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1125 n.1 (3d Cir. 1969); *Mistletoe Express Service v. Motor Expressmen's Union,* 443 F.Supp. 1, 3 (W.D. Okl.1975), *aff'd,* 566 F.2d 692 (10th Cir. 1977); *Celmer v. Luden's, Inc.,* 427 F.Supp. 991, 992 (E.D.Pa.1977); *Proctor & Gamble Manufacturing Co. v. Independent Oil & Chemical Workers,* 386 F.Supp. 213, 215–16 (D.Md.1974); *Underwood Corp. v. Local 267, International Union of Electrical, Radio & Machine Workers,* 171 F.Supp. 102 (D.Conn.1957). Therefore, our inquiry is directed to whether the complaint in this case can fairly be read to so allege.

■ The major thrust of plaintiff's attack on the arbitration award is that there was no basis in the collective bargaining agreement for the arbitrator's decision that only non-probationary employees were entitled to be discharged for cause. It is plaintiff's position that the arbitrator developed the concept that Davis was a probationary employee and hence dischargeable at will without any support in the language of the

1. Because we are remanding to the district court, we take no position on the court's ruling

dismissing the claim based on the initial discharge.

collective bargaining agreement. He claims that the only support the arbitrator had for such a ruling was derived from a stipulation entered into in bad faith by the Union, rather than from the collective bargaining agreement. Therefore, he claims, the arbitrator exceeded his powers under the collective bargaining agreement. It is evident that this contention must arise under the collective bargaining agreement because the arbitration process was established under that agreement, not under the settlement agreement. The collective bargaining agreement, not the settlement agreement, provided for the appointment of an arbitrator. It was that agreement which limited the arbitrator to its terms, and which contained the procedural requirements allegedly violated by him. In fact, the allegation that the arbitrator's award was untimely under the collective bargaining agreement (paragraph 18) is enough to support jurisdiction under section 301. *See Local Union 560, International Brotherhood of Teamsters v. Anchor Motor Freight, Inc.,* 415 F.2d 220, 222–23 (3d Cir.1969); *cf. West Rock Lodge No. 2120, International Association of Machinists & Aerospace Workers v. Geometric Tool Co.,* 406 F.2d 284 (2d Cir. 1968).

As was the case in Count One, there are allegations in Count Two referring to the settlement agreement, such as the claim that the arbitrator's award renders the settlement agreement a nullity and meaningless. Neither the Union nor the employer objected to the arbitrator's reference to the settlement agreement, and the arbitrator held that it was necessary to interpret the collective bargaining agreement and the settlement agreement in tandem. Plaintiff claims that the settlement agreement, properly construed, gave him the status of a non-probationary employee for purposes of the collective bargaining agreement. The issue whether the arbitrator correctly interpreted the settlement agreement is not before us. It is apparent, however, from the express language of the arbitrator's award that the Union and OBL stipulated that the threshold question before the arbitrator was "whether Mr. David A. Davis, at the

time of his discharge from Ohio Barge Line, Inc., in January of 1981, was a 'probationary' employee as *that quoted term is used in the collective bargaining agreement* and in the testimony taken on September 8, 1981, in the within arbitration case" (emphasis added). Therefore, Count Two of the complaint, which is directed to the arbitrator's power under the collective bargaining agreement, properly invoked federal jurisdiction under section 301.

Accordingly, we will also vacate the judgment dismissing Count II of the complaint and remand for further proceedings.

## C.

### Count Three

■ The district court, correctly anticipating our decision in *Beam v. Sun Shipbuilding & Dry Dock Co.,* 679 F.2d 1077 (3d Cir.1982) (per curiam), held that section 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 793, did not give rise to a private right of action. Plaintiff argues that the same facts on which his handicap discrimination claim was based would also support a claim under state law and that there is pendent jurisdiction. No such claim was alleged. Furthermore, because the district court dismissed Counts I and II, there was no claim to which the third count could be pendent. Whether plaintiff's argument for application of the doctrine of pendent jurisdiction is persuasive should be addressed by the district court in the first instance. *See Norris v. Frame,* 585 F.2d 1183, 1189 n.18 (3d Cir.1978); *Schultz v. Cally,* 528 F.2d 470, 476 (3d Cir.1975).

## III.

For the foregoing reasons, we will vacate the district court order dismissing the complaint and will remand for further proceedings in accordance with this opinion.

ALDISERT, Circuit Judge, dissenting.

I would affirm the judgment of the district court, dismissing for want of federal jurisdiction, essentially for the reasons set

forth by District Judge Maurice B. Cohill, Jr., *Davis v. Ohio Barge Line, Inc.*, 535 F.Supp. 1324 (W.D.Pa.1982).

Although I agree with Judge Cohill, I quickly admit that a very respectable case can be made for the opposite result, as the majority forcefully demonstrate. Of the four federal judges who have carefully examined this matter, two find federal jurisdiction, and two do not. By virtue of the assignment of competence in the judicial hierarchy, however, a total calculus does not control, and only the arithmetic in the court of appeals is conclusive.

What divides us here is not an earthshaking matter, and, in a phrase often used by Judge Wade H. McCree, Jr., when he served as Solicitor General, "the Republic will still stand" if federal jurisdiction is found to exist in this case. We are divided merely because of differing value judgments about whether this labor case belongs in federal court or in state court.

In resolving this issue, two important legal principles compete for our attention: (1) because federal courts are courts of limited jurisdiction, we must presume that state courts have jurisdiction absent a contrary showing, for "it would not simply be wrong but indeed would be an unconstitutional invasion of the powers reserved to the states if the federal courts were to entertain cases not within their jurisdiction;"[1] and (2) § 301(a) of the Taft-Hartley Act is not to be "read ... narrowly as only conferring jurisdiction over labor organizations," *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957).[2]

It is well established that § 301(a) is available to vindicate individual employee rights arising from a collective bargaining agreement.[3] It provides for "[s]uits for violation of contracts between an employer and a labor organization representing employees." The jurisdictional question is decided in each case by letting the axe fall somewhere between two extremes: the federal court pole, where the employee's grievance is based on the interpretation or application of the specific text of the bargaining agreement; or the state court pole, where the bargaining agreement bears no relationship to the employee's grievance.

The present case rests somewhere between the two poles, but I place it closer to the state court pole. I agree with Judge Cohill that the essence of the complaint is a claim of wrongful discharge in breach of a provision in Davis' private settlement agreement (count one), and a request that the court vacate or modify the arbitrator's award because the arbitrator either ignored or improperly construed provisions of that settlement agreement (count two). To be sure, the plaintiff averred a violation of the collective bargaining agreement, as more particularly set forth by the majority. But I do not think that surplusage in a complaint is sufficient to sustain federal jurisdiction. Averred facts—not asserted abstractions—control. To make a naked averment that diversity jurisdiction obtains when the pleaded facts show that the parties are from the same state will not invest the federal court with authority to hear the case. Similarly, to make a naked averment that a grievance comes under a collective bargaining agreement will not confer federal jurisdiction when the averred facts that describe the specific contours of the grievance do not purport to show a bargaining agreement violation.

Where the law gives no rule, the demand of the plaintiff must furnish one; but

1. C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3522, at 45 (1975) (citing cases).

2. In *Smith v. Evening News Association,* the Court noted that

Textile Workers v. Lincoln Mills ... of course, has long since settled that § 301 has substantive content and that Congress has directed the courts to formulate and apply federal law to suits for violation of collective bargaining contracts. There is no constitutional difficulty and § 301 is not to be given a narrow reading.
371 U.S. 195, 199, 83 S.Ct. 267, 269–270, 9 L.Ed.2d 246 (1962).

3. *See* cases collected in *Smith v. Evening News Association,* 371 U.S. at 199–200, 83 S.Ct. at 269–270.

where the law gives the rule, the legal cause of action, and not the plaintiff's demand, must be regarded.

*McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936) (quoting *Wilson v. Daniel,* 3 U.S. (3 Dall.) 401, 407, 408, 1 L.Ed. 655 (1798)).

Thus, to me the issue is not whether § 301(a) should be construed narrowly or broadly; rather, it is whether § 301(a) is in the case at all. I do not think it is. I recognize, of course, that a respectable school of thought believes that the federal courts should assume, or even reach out for, jurisdiction if a litigant incants a naked averment of our jurisdiction, irrespective of the absence of a federal interest in the pleaded factual underpinning of the claim. I have never subscribed to that theory in the past, nor do I do so here. Federal judges are the final arbiters of whether a case comes within our gigantic power and authority. But at all times we should heed the admonition of the Bard of Stratford-on-Avon:

> O, it is excellent
> To have a giant's strength, but it is tyrannous
> To use it like a giant.[4]

**4.** W. Shakespeare, Measure for Measure, II, ii, 107–08 (The Riverside Shakespeare 309 (Houghton-Mifflin Co. 1974)).