**GENERAL TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS, LOCAL UNION 249, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff,**

v.

**CONSOLIDATED FREIGHTWAYS, Defendant.**

**Civ. A. No. 78–791 H.**

United States District Court,
W. D. Pennsylvania.

Feb. 1, 1979.

Edward H. Walter, Jubelirer, Pass & Intrieri, Pittsburgh, Pa., for plaintiff.

Allan L. Fluke, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

### I

Plaintiff commenced this action pursuant to the provisions of Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C., § 185 et seq., seeking to have two separate grievance awards made under a collective bargaining agreement between plaintiff and the defendant "set aside, vacated and declared void."[1]

From the allegations of the complaint as amended, the admissions with regard to those allegations which defendant made in its answer and during the pretrial conference of the parties with the court, and the evidence introduced at the hearing, the following appears.

Plaintiff is an unincorporated labor organization which represents several thousand drivers and warehousemen in the western Pennsylvania area and has its principal place of business in Pittsburgh, Allegheny County, Pennsylvania.

The defendant is a corporation which maintains trucking terminals located within the Western District of Pennsylvania and is engaged in an industry affecting commerce within the meaning of the Labor-Management Relations Act of 1947, as amended.

1. In its complaint the plaintiff sought injunctive relief as well as judgment vacating the award of the "arbitrator" in the two grievances in question. However, since the plaintiff had ceased to represent any of the defendant's employees prior to the hearing in this court because of a transfer of the defendant's base of operations out of the area covered by plaintiff, counsel for plaintiff withdrew the demand for injunctive relief, so that all that remains for the court to determine is whether or not the awards in question should be upheld or vacated.

At the time of the occurrence of the matters pertinent hereto, the plaintiff was the sole and exclusive bargaining agent for all city and over-the-road truck and freight drivers and haulers at defendant's western Pennsylvania terminals.

Plaintiff and defendant were parties to a collective bargaining agreement known as the "National Master Freight Agreement—Local Cartage Supplemental Agreement" (Agreement) which was in effect at all times pertinent hereto.

On February 23, 1978, one Regis Frank was a member of the plaintiff union and was employed by the defendant as a driver of one of its tractor-trailer vehicles. On that day Mr. Frank was instructed by a dispatcher employed by the defendant to drive the tractor portion of one of defendant's vehicles on the public highways of Pennsylvania to a place approximately five miles distant. The tractor had no mud flaps, and Mr. Frank protested to the dispatcher that it was dangerous as well as a violation of the Pennsylvania Motor Vehicle Code (Vehicle Code) to drive a tractor on the public highways without this equipment. However, he was told that the company would pay all fines and that he should do as he had been instructed.

Mr. Frank drove the tractor as instructed and subsequently filed a grievance in accordance with the grievance procedures of the Agreement aforesaid. The ultimate "arbitrator" of the grievance, the Western Pennsylvania Teamsters and Employers Joint Area Committee (Joint Area Committee),[2] denied the grievance in a decision which stated simply: "The Committee ruled that, based on the facts as presented and that the Company accepts all liability for alleged violations and will pay fines, if any, that may be levied, the claim of the Union is denied."

The second grievance award which plaintiff seeks to have vacated also has to do with an instruction from the defendant company to one of its union employees to perform an act which the employee believed constituted a violation of the Vehicle Code.

On March 13, 1978, one James Raible was a member of the plaintiff union and was employed by the defendant as a driver of one of its tractor-trailer vehicles. On that day Mr. Raible was instructed by a dispatcher employed by the defendant to take a trailer on to the public highways of Pennsylvania which did not have a "trailer plate or owner's card on it." Mr. Raible protested that this was in violation of the Vehicle Code and I.C.C. rules and regulations, but he was, nevertheless, instructed to follow orders.

Mr. Raible did as instructed and later filed a grievance under the Agreement aforesaid.[3] In his grievance Raible stated that after he was dispatched with the trailer in question and noticed that there was no trailer plate or owner's card, he reported this to the company, but was told to take the trailer out even though this constituted a violation of the Vehicle Code. The adjustment which he requested in his grievance was not to be asked or forced to break state laws.

The Joint Area Committee found that the company's position was that the unit in question was properly licensed and had an owner's card, but apparently both the plates and card had been lost, that the company intended to have plates and cards reissued and had agreed in the meantime to assume all responsibility for failure to have plates and owner's card with the trailer. The Joint Area Committee then denied the grievance by stating that its ruling on the Regis Frank grievance would apply.

II

The principles governing the limited role which a court plays in reviewing an arbitra-

---

2. "Joint committee awards are reviewed, under the same standards as binding arbitration awards." *International Brotherhood of Teamsters, Etc. v. Western Pennsylvania Motor Carriers Association,* 574 F.2d 783, 786 fn. 3 (3rd Cir., 1978).

3. A similar grievance on behalf of one Donald Geiser was consolidated with that of Mr. Raible and will be governed by our decision as to Mr. Raible.

tor's award made under the provisions of a collective bargaining agreement are now fairly well established.

■ If the parties to a collective bargaining agreement have agreed to submit a particular dispute to arbitration, it is the arbitrator's construction of that contract which was bargained for and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him merely because their interpretation of the agreement is different from his. However, an arbitrator does not sit to dispense his own brand of industrial justice, and while he may look for guidance to many sources, his award is legitimate only so long as it draws its essence from the collective bargaining agreement. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ The interpretation of a collective bargaining agreement by labor arbitrators must not be disturbed so long as it is not in manifest disregard of the law. And the award of arbitrators is not opened to judicial review merely because they have misconstrued a contract. Further, only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award. *International Brotherhood of Teamsters, Etc. v. Western Pennsylvania Motor Carriers Association, supra. Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3rd Cir., 1969).

■ Notwithstanding the well recognized limited scope of our review of an award deemed to be arbitrable, there are circumstances when an award may be vacated. The court in *Ludwig* listed several: An award may be vacated where it is shown that there was fraud, partiality, or other misconduct on the part of the arbitrator, or where it violates a specific command of some law, or, citing *Black v. Cutter Laboratories*, 43 Cal.2d 788, 798, 278 P.2d 905, 911 (1953), where the award is inconsistent with public policy. *Ludwig, supra.* fn. 27, pages 1128–1129.

■ We believe that the awards here in question are inconsistent with the public policy of the Commonwealth of Pennsylvania and must therefore be vacated.

The Vehicle Code specifically provides that "Every truck, trailer and truck tractor (without a semitrailer) driven on a highway shall be so constructed or equipped as to bar water or other road surface substances thrown from the rear wheels of such vehicle or combination at tangents exceeding 22½ degrees, measured from the road surface, from passing in a straight line to the rear of such vehicle or combination." 75 Pa.C.S.A. § 4533. These items of equipment are commonly referred to as "mud flaps."

That Code requires that registration plates be obtained and securely fastened to the vehicles to which they are assigned or on which their use is authorized in accordance with regulations promulgated by the Department of Motor Vehicles, and penalties are provided making it a summary offense for any person to drive, or for an owner knowingly to permit to be driven upon any highway any vehicle of a type required to be registered which is not registered. 75 Pa.C.S.A. 1331, 1332, 1301.

The Vehicle Code further states that if a registration plate has been lost, stolen, or damaged or rendered illegible, this fact must be made known to the Department of Motor Vehicles within forty-eight hours. In those circumstances the owner or operator can avoid penalty for failing to have the registration plate secured to the vehicle to which it applies, but only if he has in his possession an affidavit that the plate was lost or stolen and that application for a new plate was made within forty-eight hours as required by the law. 75 Pa.C.S.A. 1333.

The foregoing provisions of the Vehicle Code, obviously designed and intended by the Pennsylvania Legislature to promote the safe and proper use of its highways, constitute the law and, of course, the public policy of Pennsylvania. The awards of the Joint Area Committee upholding the defendant's right to compel its employees to violate that law are plainly contrary to public policy and will be vacated.

**350**

Having decided that the Joint Area Committee awards must be vacated because they are contrary to the public policy of Pennsylvania, the basis of those awards becomes irrelevant, and it is unnecessary, for example, that we even consider whether or not the Committee misapplied or misconstrued the Agreement. Nevertheless, we do note in passing that Article XVI of the Agreement specifically prohibits the defendant from requiring its employees ". . . to take out on the streets or highways any vehicle that is not in safe operating condition or equipped with the safety appliances required by law . ." or under any circumstance to require an employee ". . . to engage in any activity . . . in violation of any applicable statute or court order, or in violation of a government regulation relating to safety of person or equipment . . ."

While we have not based our decision on this point, it would seem that the Committee did indeed "dispense [its] own brand of industrial justice"[4] when it ignored the plain language of the Agreement and denied the grievances on the ground that the "Company accepts all liability for alleged violations and will pay fines, if any, that may be levied . . . ."

---

4.   *United Steelworkers of America v. Enterprise Wheel and Car Corp., supra.*